IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CRIMINAL NO. 3:24-cr-00013 |
| | ) | |
| vs. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| | ) | |
| DAVID ENRIQUE REMIGIO, | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

I.   Introduction………..……………………………………………………..……………………1

II.  Pursuant to 18 U.S.C. § 3553, the Court should impose a sentence below the advisory guideline range…………………………………….……………………...3

    A.   The advisory guideline range overemphasizes the seriousness of the offense…………………………………………………………………….......3

    B.   The history and characteristics of Mr. Remigio support a substantial downward variance……………………………………………………………6

III. Conclusion……………………………….…………………………………….7

I.   **Introduction.**

On August 12, 2024, Mr. Remigio, a first-time offender, accepted responsibility for his conduct by pleading guilty to Count I of the indictment: receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1). This matter is scheduled for sentencing on March 13, 2025.

The final presentence report provides a total offense level of 37 and a criminal history

1

category of I, resulting in an advisory sentencing guideline range of 210-240. (PSR, ¶ 99).[1]

| | |
|---|---:|
| Base Offense Level. §2G2.2(a)(2) | 22 |
| Specific Offense Characteristics (SOC): prepubescent minor. §2G2.2(b)(2) | +2 |
| SOC: knowing distribution for valuable consideration but not pecuniary gain. §2G2.2(b)(3)(B) | +5 |
| SOC: material portrays sadistic or masochistic conduct. §2G2.2(b)(4) | +4 |
| SOC: use of a computer. §2G2.2(b)(6) | +2 |
| SOC: 600 or more images. §2G2.2(b)(7)(D) | +5 |
| Adjusted Offense Level | 40 |
| Acceptance of Responsibility. §3E1.1(a) | -2 |
| Acceptance of Responsibility: timely plea. §3E1.1(b) | -1 |
| Total Offense Level | 37 |

(PSR, ¶¶ 31-44).

"During the last five fiscal years (FY2019-2023), there were 328 defendants whose primary guideline was §2G2.2, with a Final Offense Level of 37 and a Criminal History Category of I . . . ." (PSR, ¶ 100). For those individuals, "the average length of imprisonment imposed was 151 month(s) and the median length of imprisonment imposed was 144 month(s)." *Id.*

Mr. Remigio requests a substantial downward variance from the advisory range because the advisory range is greater than necessary to fulfill the purposes of sentencing. In determining the appropriate sentence, the Court must employ a tiered process, beginning with calculating the applicable guideline range. *Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of

---

[1] The technical guideline range is 210-262, but because the statutory max is 240, the range becomes 210-240.

administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After calculating the range under the guidelines, "the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50.

**II.     Pursuant to 18 U.S.C. § 3553, the Court should impose a sentence below the advisory guideline range.**

The advisory guideline range is greater than necessary to comply with the sentencing purposes of section 3553: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. 18 U.S.C. § 3553(a)(1), (3). The mitigating circumstances, in conjunction with every other applicable factor, support a substantial downward variance.

**A.     The advisory guideline range overemphasizes the seriousness of the offense.**

Under section 2G2.2 the typical defendant scores very high relative to the statutory mandatory minimum and maximum sentence. The applicable advisory guideline range is substantially inflated based on factors that do not account for the individual circumstances of the case. In December of 2012, the Federal Sentencing Commission released a report to Congress addressing this issue. *See* U.S. SENT'G COMM'N, 2012 REPORT TO THE CONGRESS: FED. CHILD PORNOGRAPHY OFFENSES (2012) (available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offe

3

nses/Full_Report_to_Congress.pdf). Building on that report, the Commission submitted another report almost a decade later in 2021. U.S. SENT'G COMM'N, FED. SENT'G OF CHILD PORNOGRAPHY: NON-PRODUCTION OFFENSES (June 2021) [hereinafter "2021 Report"] (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf).

The 2021 Report summarized the reasons for initially examining sentencing in non-production child porn cases, including "the steady increase in the percentage of sentences imposed below the applicable guideline range in non-production child pornography cases, which indicated that courts increasingly believed the sentencing scheme for such offenders was overly severe." *Id.* at 1.

Relying on data from fiscal year 2019, the Commission explained that most of the section 2G2.2(b) enhancements "continued to apply in the vast majority of non-production child pornography cases. Notably, over 95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12)." *Id.* at 19. "The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84.0% of cases) or having 600 or more images (77.2% of cases) were also applied in most cases." *Id.*

The regularity for which these enhancements apply has not materially changed since 2019. Based on 2023 statistics published by the Commission, these enhancements were applied with the following regularity:

| Material involving a minor under 12 (§2G2.2(b)(2)) | 94.4% |
| Material portraying sadistic or masochistic conduct; or sexual abuse or exploitation of an infant or toddler (§2G2.2(b)(4)(A), (B)) | 80.8% |

| Use of a computer (§2G2.2(b)(6)) | 97.1% |
| --- | --- |
| 600 or more images (§2G2.2(b)(7)(D)) | 76.6% |

*See* U.S. SENT'G COMM'N, USE OF GUIDELINES AND SPECIFIC OFFENSE CHARACTERISTICS GUIDELINE CALCULATION BASED FISCAL YEAR 2023, at 99-100 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2023/Ch2_Guideline_FY23.pdf).

"[A]cross all non-production child pornography offense types, §2G2.2 fails to distinguish adequately between more and less severe offenders." 2021 Report, at 19. At least one court has concluded the same. In finding section 2G2.2 ill-suited to fashioning a reasonable sentence, the court in *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009), found that the guideline "impermissibly and illogically skews sentences for even 'average' defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability."

> This is so, largely because the level enhancements, some quite extreme, are based on circumstances that appear in nearly every child pornography case: using the internet, amassing numerous images (made particularly easy by the internet); presence of video clips counted as 75 images each; presence of images of prepubescent minors and violence (broadly defined to include a prepubescent minor engaged in a sex act); and some "distributing" in return for other images. This guideline, thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment.

*Id.* (citations omitted).

In Mr. Remigio's case, four of the five enhancements are typical of the nature of his charge. The four generic enhancements correlate to actions made easy by technological advancements, rather than to increased culpability.

5

| Material involving a minor (§2G2.2(b)(2)) | +2 |
| Material involving sadistic or masochistic conduct (§2G2.2(b)(4)) | +4 |
| Use of a computer (§2G2.2(b)(6)) | +2 |
| 600 or more images (§2G2.2(b)(7)(D)) | +5 |

And the single non-generic enhancement is overly punitive.

| Distribution (§2G2.2(b)(3)(B)) | +5 |

The distribution enhancement functionally increases Mr. Remigio's level by 7. Not only does it increase his offense level by 5, but it also prevents him from getting the 2-level decrease from section 2G2.2(b)(1). This functional 7-level shift would move his guidelines from 210-240 to 97-121.

**B. The history and characteristics of Mr. Remigio support a substantial downward variance.**

The Court should vary down to 144 months. Mr. Remigio grew up in a hectic environment. His father struggled with substances and would take Mr. Remigio to conduct drug transactions. He was kidnapped by the father of his sister's child. (PSR, ¶ 53).

School did not prove to be a safe space. He was bullied for being Hispanic, including being called derogatory names and hit with objects and hands. (PSR, ¶ 53). Switching schools did not stop the bullying because he was also bullied at the new school. (PSR, ¶ 53). The bullying took its toll because he began getting poor grades, which resulted in the school holding him back. (PSR, ¶ 53). When he was 11 years old, he was sexually abused by a friend on multiple occasions. (PSR, ¶ 54).

As if the involvement in drug transactions, kidnapping, bullying, and sexual abuse was not

enough, he also experienced gun violence. As a teenager, he saw multiple shootings. (PSR, ¶ 53). By the time he was 17, he had had a gun pointed at him 3 times. At one point, he was robbed at gunpoint while walking to a friend's house. (PSR, ¶ 53). And a police officer pointed a gun at him for playing with a BB gun. (PSR, ¶ 53).

To make explicit what is clear from just reading his history, Mr. Remigio suffers with severe mental health issues. He reports receiving diagnoses for depression, anxiety, and PTSD. (PSR, ¶ 68). And of course, the tough childhood and teenage years, coupled with the mental disorders, also has led to unhealthy substance use. In 2023, Mr. Remigio was diagnosed with alcohol use disorder, moderate, in sustained remission. (PSR, ¶ 77).

Mr. Remigio recognizes the concerns with his actions that formed the basis for his receipt of child pornography charge. A sentence of 144 months accounts for the aggravating circumstances and other sentencing factors while also accounting for his history and characteristics.

### III. Conclusion.

Wherefore, Mr. Remigio respectfully requests that the Court impose a sentence consistent with the arguments in this sentencing memorandum.

Respectfully submitted,

FEDERAL DEFENDER'S OFFICE
CBI Bank & Trust Building
101 W. 2nd Street, Suite 401
Davenport, Iowa 52801-1815
TELEPHONE: (563) 322-8931
TELEFAX: (563) 383-0052
EMAIL: abdel_reyes@fd.org

By: /s/*Abdel Reyes*
    **Abdel Reyes**
    Assistant Federal Defender
    ATTORNEY FOR DEFENDANT

cc: Matthew A. Stone, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on March 7, 2025, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
    /s/