IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

```
- - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                          :
     Plaintiff,           :
                          :
vs.                       :    Case No. 3:24-cr-13
                          :
DAVID ENRIQUE REMIGIO,    :    TRANSCRIPT OF SENTENCING
                          :
     Defendant.           :
- - - - - - - - - - - - - X
```

Courtroom 242, Second Floor
U.S. Courthouse
131 East Fourth Street
Davenport, Iowa
March 1, 2025
1:20 p.m.

BEFORE: THE HONORABLE STEPHEN H. LOCHER, District Judge

APPEARANCES:

For the Plaintiff:        MATTHEW A. STONE, ESQ.
                          United State's Attorney's Office
                          131 East Fourth Street, Suite 310
                          Davenport, IA  52801

For the Defendant:        ABDEL REYES, ESQ.
                          Federal Public Defender
                          101 West Second Street, Suite 401
                          Davenport, IA  52801


TONYA R. GERKE, CSR, RDR, CRR
United States Courthouse
123 East Walnut Street, Room 197
Des Moines, IA 50309

```
 1                      P R O C E E D I N G S
 2           THE COURT:  Please be seated.
 3      We're convened in open court for sentencing in United
 4  States versus David Enrique Remigio, Case Number 3:24-cr-13.
 5      The Government is represented today by Assistant United
 6  States Attorney Matt Stone.
 7      Mr. Stone, is the Government ready to proceed?
 8           MR. STONE:  We are, Your Honor, and I have at counsel
 9  table with me Sergeant Dave Murguia from the Des Moines County
10  Sheriff's Office.
11           THE COURT:  Very good.
12      The defendant is present in person in the courtroom with
13  his attorney, Abdel Reyes.
14      Mr. Reyes, is the defense ready to proceed?
15           MR. REYES:  Yes, Your Honor.
16           THE COURT:  Mr. Remigio, you have been adjudicated
17  guilty of one offense by virtue of your guilty plea.  That
18  offense is receipt of child pornography.  The purpose of today's
19  hearing is for me to determine the sentence for that offense.
20      Do you understand what we're doing today, sir?
21           THE DEFENDANT:  Yes, Your Honor.
22           THE COURT:  Mr. Reyes, have you and your client read
23  and discussed the presentence report and any addendum thereto?
24           MR. REYES:  Yes, Your Honor, multiple times.
25           THE COURT:  Does the defense have any objections to the
```

```
 1  PSR?
 2          MR. REYES:  No, Your Honor.
 3          THE COURT:  Mr. Stone, does the Government have any
 4  objections to the PSR?
 5          MR. STONE:  No, Your Honor.
 6          THE COURT:  In that case, I'll adopt the PSR in its
 7  entirety.  That includes the calculation of offense level 37,
 8  criminal history category I, and resulting guidelines range of
 9  210 to 240 months' imprisonment.
10     Mr. Stone, does the Government agree that that's the
11  guidelines today?
12          MR. STONE:  We do, Your Honor.
13          THE COURT:  Mr. Reyes, does the defense agree as well?
14          MR. REYES:  Yes, Your Honor, we agree.
15          THE COURT:  Mr. Reyes, is there anything you think we
16  need to take up before I give each side an opportunity to be
17  heard on the appropriate sentence?
18          MR. REYES:  Yes, Your Honor, just the opportunity to
19  introduce all the exhibits that we filed.
20          THE COURT:  Yes, please.  Go ahead.
21          MR. REYES:  And that would be Exhibits A through G.
22          THE COURT:  All right.  Exhibits A through G will be
23  admitted, and I did review them in advance of the hearing.
24           * * * Exhibits A through G admitted. * * *
25          THE COURT:  Mr. Stone, is there anything else from your
```

1  perspective that we need to take up today before I hear from
2  each side on a sentence?
3         MR. STONE:  No, Your Honor.
4         THE COURT:  In that case, Mr. Reyes, I'll give you an
5  opportunity to speak first on your client's behalf.
6         MR. REYES:  Thank you, Your Honor.
7     When Mr. Remigio most needed a strong support system, he
8  didn't have it.  When he was a child -- and this is highlighted
9  in the PSR as well as Defense Exhibit -- Exhibit B (sic), the
10 report from Ms. Elizabeth Griffin.  But when Mr. Remigio was a
11 child, his dad struggled with substances and would take him out
12 on drug transactions.
13     In addition to this, also, growing up, Mr. Remigio was
14 kidnapped by the father of his sister's child, so from a very
15 early age, we see that there are some potential frictions, I
16 guess, and Mr. Remigio and his family or at least some members
17 of his family are not providing the support that he needs.  But
18 perhaps he could get that support somewhere else.
19     How about school?  As highlighted by the PSR as well, when
20 Mr. Remigio went to school when he was growing up, he was
21 bullied by virtue of being Hispanic -- I'm assuming the only
22 Hispanic at the school or at least in his class.  He was bullied
23 multiple times, both mentally and physically, so we already have
24 two different areas pushing -- or creating trauma for a young
25 brain.

```
 1         But how about his friends?  As highlighted also by the PSR,
 2   Mr. Remigio reported that when he was 11, one of his friends
 3   sexually abused him multiple times, so he has now three
 4   different areas -- friends, family and school -- none of them
 5   providing a strong support system for him.
 6         What about the general experiences, just being in the
 7   neighborhood and just walking around?  Well, he -- here he also
 8   struggled.  By the time he was 17, Mr. Remigio had had a gun
 9   drawn on him three times as highlighted by the PSR including one
10   of them being when he was robbed at gunpoint.
11         So before Mr. Remigio turned 18, he had been kidnapped,
12   bullied, sexually abused, robbed at gunpoint, and taken on drug
13   transactions.  I note all of this, Your Honor, to signal that it
14   is not at all surprising that Mr. Remigio has struggled with
15   both substance abuse as well as mental health.
16         As the expert report -- and that should be Defense
17   Exhibit F -- notes at page 14, Mr. Remigio meets the criteria
18   for PTSD, persistent depressive disorder, generalized anxiety
19   disorder, and alcohol use disorder.  These mental health issues
20   haven't been appropriately addressed in the past and help
21   provide some context as to why Mr. Remigio turned to online
22   sexual behavior, basically being a poor -- very poor but poor
23   social -- I'm sorry -- coping response.
24         By the time -- just looking ahead, by the time that
25   Mr. Remigio gets out of prison -- and this is also highlighted
```

1  in Ms. Griffin's report -- his risk of recidivism would be low
2  and would continue to decrease even further due to specific
3  factors including the fact that he's going to be older, the fact
4  that he's going to have ongoing mental health and sex offense
5  treatment as well as the fact that Mr. Remigio is also going to
6  have substance abuse treatment to help alleviate any potential
7  concerns of future commissions of crimes.
8      And I will note just for the Court as well at least as to
9  age, this is consistent with the sentencing commission's own
10 analysis.  The sentencing commission throughout their report in
11 2022 address age, and they noted that as age increases on
12 individuals, the risk of recidivism decreases as well.
13     But there is a -- while a lengthy prison sentence -- while
14 a prison sentence is appropriate, there is a break point where
15 going beyond what is appropriate may actually make it worse, and
16 this, again, is highlighted in Ms. Griffin's report at pages 13
17 and 14 where she notes that sentencing low-risk offenders to
18 lengthy incarceration has the potential to actually increase
19 instead of further decrease recidivism.
20     Mr. Remigio understands what he needs to do to rehabilitate
21 himself.  He understands he needs to attend treatment.  He
22 understands that he also needs to get additional education and
23 work skills including get a GED and going into culinary
24 programs, and this is highlighted in Mr. Remigo's allocution
25 letter, our Defense Exhibit G.

1       A second main point, Your Honor, the sentencing guidelines
2  in this case are just, frankly, too punitive.  If we look at the
3  statute, instead of just the sentencing guidelines here,
4  Congress explicitly created a range of 5 to 20 months, but the
5  guidelines are already pushing him all the way to the top just
6  by virtue of the enhancements here.  20 years or anywhere close
7  to 20 years based on Congress's explicit directive of creating
8  that range should be reserved only for the cases with the least
9  amount of mitigation and also the most amount of aggravation.
10       Mr. Remigio fully understands that there are concerns that
11  are specific concern factors in his case, but there's also very,
12  very substantial mitigation pointing towards a lower -- a lower
13  range in his specific case.  This is a reason why if you look at
14  the PSR in paragraph 100 the statistical analysis shows that the
15  median for individuals with the offense level of Mr. Remigio of
16  37 but also a criminal history category of I is 144 months, and
17  the mean is 151 months but nowhere near the 210 to 240 months
18  that the guideline range suggests.
19       Bottom line, we ask for a downward variance of 144 months
20  because we think that that sentence would be sufficient but not
21  greater than necessary to comply with the sentencing factors.
22       Thank you.
23            THE COURT:  Thank you, Mr. Reyes.
24       Mr. Remigio, at this time I want to give you an opportunity
25  to speak to tell me anything you'd like me to know as I make my

1  sentencing decision.  You're under no obligation to say anything
2  today, and I have read the letter that was submitted, but if
3  you'd like to say something here in open court, now is the time.
4           THE DEFENDANT:  I feel like I've expressed my -- I'm
5  sorry.  I'm anxious.  I feel like I've said what I needed to say
6  in my letter.  Other than that, thank you.
7           THE COURT:  Thank you, sir.
8       Mr. Stone, let me hear from you on behalf of the
9  Government.
10          MR. STONE:  Thank you, Your Honor.
11      The Government's recommending a sentence within the
12  guideline range.
13      Your Honor, any case involving child pornography is always
14 very serious, but I think it's even more serious in a case like
15 this where not only is there just a very large amount of images
16 that are located, you also have the distribution and the chats
17 about distribution, but far and away the most concerning fact of
18 this case that we don't always see in child pornography cases is
19 that Mr. Remigio knew one of the victims.  He knew that his -- a
20 friend of his, an acquaintance, was abusing their 3-year-old
21 daughter for purposes of child pornography, Your Honor, that he
22 had those videos and images on his own phone, and this was
23 happening not too far away from him at all in addition to the
24 other large amount of images and videos that were located on his
25 device.

1    Your Honor, I understand that there could be mitigation in
2 this case about no prior history or the mental health and
3 substance abuse issues that Mr. Remigio had, but given the
4 amount of images, the fact that Mr. Remigio actually knew one of
5 the victims in this case, those circumstances I think warrant a
6 guideline sentence here.
7         THE COURT:  Thank you, Mr. Stone.
8    Mr. Stone, one quick question for you.  I think it's
9 obvious from the absence of anyone in the courtroom, but are
10 there any victims that wish to be heard today?
11        MR. STONE:  No, Your Honor.
12        THE COURT:  But the Government is requesting
13 restitution on behalf of those victims who have requested it;
14 right?
15        MR. STONE:  That is correct, Your Honor.
16        THE COURT:  Okay.  All right.
17    Well, I have considered all of the section 3553(a) factors,
18 although I'm not going to talk about all of them.  My job
19 ultimately is to determine the sentence that is sufficient but
20 not greater than necessary to comply with the purposes set forth
21 in that statute.
22    This is an incredibly serious offense.  Any case involving
23 the receipt or distribution of child pornography is serious.
24 It's made even more serious here because of the number of
25 images, the nature of the images, the type of content, the age

1  of the victims.  Every way this can be aggravating in a child
2  porn case is present here.
3       The most important aggravating factor is the one that
4  Mr. Stone pointed out.  There's an actual real victim, and
5  there's nothing in here to indicate that Mr. Remigio was somehow
6  trying to convince the mother of that child to make the videos,
7  although he sure seemed happy to have them, but the point is
8  it's one thing to gather information from the internet where the
9  abuse victims are far off and maybe the videos have been around
10 for a long time; this was a victim being abused almost in real
11 time, so it makes it even more serious than the garden-variety
12 child pornography case.
13      In terms of Mr. Remigio's history and characteristics, this
14 is where it gets a lot more complicated.  First of all, he has
15 no criminal history.  Second of all, he's got family support.
16 There were good letters.
17      Also, there were obvious severe, severe mental health
18 issues that's at play here.  It starts with the trauma that
19 Mr. Reyes really persuasively described, trauma in really every
20 aspect of Mr. Remigio's life:  in his family, socially, at his
21 school, in his neighborhood.  Everywhere that he could be
22 subjected to some form of abuse or isolated or ostracized, it
23 was happening.
24      It's no surprise that he ended up with the mental health
25 issues that he has, and although many people are able to deal

1  with those types of mental health issues without doing what
2  Mr. Remigio did, it is at least on some level not difficult to
3  understand why he would have gotten involved in some sort of
4  perverse behavior such as child pornography.  So that's not
5  excusing it by any stretch of the imagination, but I recognize
6  the complexities in his life that led into where he is.
7       I do, of course, have to reflect the seriousness of the
8  offense, promote respect for the law, and provide just
9  punishment.
10      In addition and among other 3553(a) factors, I have to
11 consider the sentencing guidelines.  I don't start from the
12 presumption that the guidelines range is reasonable.  I can't do
13 that.  Instead, I have to make an individualized assessment
14 based on the facts presented.  Here given the absence of any
15 criminal history, given the really extreme trauma that
16 Mr. Remigio faced over the course of his life, I am going to
17 vary downward a little bit but not a whole lot.
18      The sentence that I conclude is appropriate is 192 months'
19 imprisonment.  That's 16 years.  That's the sentence that I
20 conclude is sufficient but not greater than necessary to comply
21 with the section 3553(a) factors.
22      So, Mr. Remigio, you will be remanded to the custody of the
23 Bureau of Prisons for 192 months.
24      After he finishes serving that term of imprisonment, he
25 will be placed on supervised release for a term of 5 years.

1    Mr. Reyes, do you have any objection to the proposed
2 conditions of supervised release?
3        MR. REYES:  No, Your Honor.
4        THE COURT:  All right.  So I'm not going to read all of
5 them.
6    But, Mr. Remigio, you can't commit another federal, state,
7 or local crime.
8    You can't unlawfully possess or use a controlled substance.
9    You'll have to make restitution payments.  I'll talk about
10 that in a minute.
11   You'll have to participate in the collection of your DNA,
12 and you'll have to comply with the requirements of the Sex
13 Offender Registration and Notification Act.
14   You cannot own, possess, or have access to a firearm,
15 ammunition, or other destructive device.
16   You'll have to participate in testing and/or treatment for
17 substance abuse, mental health, and a sex-offense-specific
18 treatment program.
19   You'll have to submit to periodic polygraph testing.
20   You'll have to comply with all sex offender laws in any
21 state where you live or work.
22   You'll have to pay restitution.  I'll explain the amount in
23 a few minutes.
24   You must not apply for, solicit, or incur any further debt
25 until you've paid off that restitution.

```
 1          You'll have to provide complete access to financial
 2   information.
 3          You'll have to refrain from associating with anyone engaged
 4   in the exploitation of minors.
 5          You must not have any direct contact with anyone under the
 6   age of 18 including in employment without probation office
 7   approval.
 8          You cannot contact any victims or their families without
 9   probation office permission.
10          You cannot view or possess any visual depiction of sexually
11   explicit conduct, even adult.
12          You cannot use or possess any internet-capable device
13   without probation office approval.  If you are approved to have
14   such a device, you'll have to submit them for unannounced
15   examinations or searches, including possible removal.
16          If you haven't obtained it already, by the time you're on
17   supervised release, you'll have to obtain a GED or participate
18   in GED classes.
19          And you'll have to submit to a search of your person and
20   property if a probation officer has reasonable suspicion to
21   believe you have violated a term of supervised release.  And
22   property includes office, vehicle, residence, cell phones, any
23   other computer or electronic data storage device.  It includes
24   everything.
25          I have 13 victims to my knowledge that have requested
```

```
 1  restitution, and I have analyzed the losses that they have
 2  presented evidence of.  I have compared it to this particular
 3  defendant's causal relationship in causing those losses, and
 4  ultimately I conclude that $3,000 is the appropriate award for
 5  each of those victims, so there will be $3,000 for victims
 6  identified as DJMW; Pia, that's P-i-a; Mya, M-y-a; April; Ali,
 7  A-l-i; Raven; Jenny; Taylor; Sloane, S-l-o-a-n-e; Lily; Maria;
 8  SV; and Audrey.  It will be $3,000 per victim in restitution.
 9  That's a total of $39,000.
10      I'm not going to order any additional criminal fines beyond
11  that because I conclude that Mr. Remigio does not have the
12  ability to pay, and I'd rather his resources be applied to
13  restitution.
14      I will enter a final order of forfeiture with respect to
15  the cell phone at issue in the offense which was identified in
16  the preliminary order of forfeiture that was filed a few months
17  ago.
18      I will enter -- or order a special assessment in the amount
19  of $100 for the one count of conviction.
20      Mr. Reyes, is there any recommendation you'd like me to
21  make for placement or programming?
22          MR. REYES:  Yes, Your Honor.  Danbury, Connecticut;
23  Devens, Massachusetts; and Elkton, Ohio.
24          THE COURT:  Sure.  So it was Danbury; Elkton, Ohio; and
25  what was the third one or middle one?
```

```
 1            MR. REYES:  Oh, Devens, Massachusetts.
 2            THE COURT:  All right.  I'll include those
 3   recommendations to the extent consistent with security
 4   designations and classifications.
 5       Mr. Stone, are there any counts to be dismissed?
 6            MR. STONE:  Yes, Your Honor.  We would move to dismiss
 7   Count 2.
 8            THE COURT:  All right.  Count 2 will be dismissed.
 9       Is there anything else other than appellate rights,
10   Mr. Stone, that you think we need to take up today?
11            MR. STONE:  I don't believe so, Your Honor.
12            THE COURT:  Mr. Reyes, anything else from your
13   perspective?
14            MR. REYES:  No, Your Honor.
15            THE COURT:  All right.  Mr. Remigio, you do have the
16   right to appeal the sentence that I've imposed today.  If you
17   wish to appeal, a written notice of appeal has to be filed with
18   the district court within 14 days.  If you wish to appeal and
19   cannot afford the costs of an appeal, those costs will be paid
20   for you including the costs of your attorneys.
21       There are really good resources in the Bureau of Prisons,
22   Mr. Remigio, and I hope you'll take advantage of them because I
23   think they're going to do a lot of good for you when you come
24   out on the other side of this sentence.
25       I wish you the best of luck, and we're adjourned.
```

1           (Proceedings concluded at 1:40 p.m.)

2
                        C E R T I F I C A T E
3           I, Tonya R. Gerke, a Certified Shorthand Reporter of
   the State of Iowa and Federal Official Realtime Court Reporter
4  in and for the United States District Court for the Southern
   District of Iowa, do hereby certify, pursuant to Title 28 U.S.C.
5  Section 753, that the foregoing is a true and correct transcript
   of the stenographically reported proceedings held in the
6  above-entitled matter and that the transcript page format is in
   conformance with the regulations of the Judicial Conference of
7  the United States.
            Dated at Des Moines, Iowa, March 27, 2025.
8

9
                         /s/ Tonya R. Gerke
10                       Tonya R. Gerke, CSR, RDR, CRR
                         Federal Official Court Reporter
11

12                              INDEX

13 EXHIBITS                                              PAGE

14  Exhibits A through G                                   3

15

16

17

18

19

20

21

22

23

24

25